[Cite as *Anton v. Petras*, 2025-Ohio-2861.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

HANY ANTON, M.D.,                     :

    Plaintiff-Appellant,         :

                                   Nos. 113858 and 113859

    v.                             :

KEITH PETRAS, M.D., ET AL.,          :

    Defendants-Appellees.        :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART, REVERSED IN PART,
                 AND REMANDED
**RELEASED AND JOURNALIZED:** August 14, 2025

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-21-955953

---

*Appearances:*

Thrasher Dinsmore & Dolan, Leo M. Spellacy, Jr., Ezio A. Listati, Samuel T. O'Leary, and Elizabeth E. Collins; Warner Law, Tim Warner, *for appellant.*

Lewis Brisbois Bisgaard & Smith, LLP, John F. Hill, and Meleah M. Skillern, *for appellee* Americare Kidney Institute, LLC.

Frantz Ward LLP, James B. Niehaus, and Angela D. Lydon, *for appellee* Ronald Flauto, D.O.

Sonkin & Koberna, LLC, Mark R. Koberna, and Rodd A. Sanders, *for appellees* Keith Petras, M.D., Kenneth Rosplock, M.D., Anca Vlasie, M.D., Pushkar Agrekar, M.D., Jayaprakash Dasari, M.D., Antonio Ligon, M.D.,

Vinh Nguyen, M.D., Oluwaseun Opelami, M.D., Rupesh Raina, M.D., Natthavat Tanphaichitr, M.D., and Miriam Zidehsarai, M.D.

LISA B. FORBES, P.J.:

{¶ 1} Plaintiff-appellant Dr. Hany Anton appeals from the denial of his motion for summary judgment and grant of summary judgment in favor of defendants-appellees, Americare Kidney Institute, L.L.C. ("AKI") and its physician members, on claims arising out of allegations that appellees breached certain fiduciary duties, as well as AKI's operating agreement, when they removed Dr. Anton as the Chief Executive Officer ("CEO") of AKI, reduced his pay, and refused to indemnify him for litigation expenses associated with a derivative lawsuit filed against him. For the reasons that follow, we affirm the trial court's grant of summary judgment in part, reverse in part, and remand the case for further proceedings.

## I. FACTS AND PROCEDURAL HISTORY

### A. Undisputed Facts

{¶ 2} AKI is a Northeast Ohio nephrology-practice group that provides medical care to patients with kidney-related illnesses. AKI was established as a limited-liability company on April 16, 2013, by eight founding members ("Founding Members"). Six of those Founding Members, including Dr. Anton, were still with the company at the time of Dr. Anton's removal as CEO.[1] Since its founding, AKI

---

[1] Those remaining Founding Members are: (1) Hany S. Anton, M.D., (2) Ronald Flauto, D.O., (3) Keith Petras, M.D., (4) Wassim El-Hitti, M.D., (5) Pushkar Argekar, M.D., and (6) Saurabh Bansal, M.D.

has acquired additional, nonfounding, physician members to the group. At the time of Dr. Anton's removal, there were 13 nonfounding members.[2]

{¶ 3} Pertinent to this appeal, AKI was governed by its Amended and Restated Operating Agreement dated February 15, 2016 (the "Operating Agreement"). The Operating Agreement provided, among other things, that the "day to day management and control of the business and affairs" of the company rests with the CEO and Chief Operating Officer ("COO"). Dr. Anton held the position of CEO from the date of AKI's inception through June 3, 2020, when he was removed by membership vote. Dr. Flauto, another Founding Member, was the initial COO of the company. Dr. Flauto remained in the position of COO until April 2017 when he stepped down following disagreements with Dr. Anton. The record reflects that Dr. Anton and Dr. Flauto's relationship remained strained in the years that followed. By October 2018, the relationship between the doctors had deteriorated to such an extent that Dr. Anton filed a personal lawsuit against Dr. Flauto alleging, among other things, defamation and intentional infliction of emotional distress. *Anton v. Flauto*, 2024-Ohio-4788 (8th Dist.). Dr. Flauto responded by filing counterclaims. *See id*.

{¶ 4} On September 11, 2019, AKI held a members meeting, where 15 of the 19 members were present. At the meeting, a representative of Medic Management

---

[2] (1) Aziz Bakhous, M.D.; (2) Jayaprakash Dasari, M.D.; (3) Antonio Ligon, M.D.; (4) Marc McKinley, D.O.; (5) Vinh Nguyen, M.D.; (6) Oluwaseun Opelami, M.D.; (7) Rupesh Raina, M.D.; (8) Akhilesh Rao, M.D.; (9) Kenneth Rosplock, M.D.; (10) Natthavat Tanphaichitr, M.D.; (11) Anca Vlasie, M.D.; (12) Amr Yafi, M.D.; and (13) Miriam Zidehsarai, M.D.

Group, LLC ("MMG"), a consulting company that had been commissioned by Dr. Anton to assess the business health of AKI, gave a presentation on MMG's findings, which were detailed in a separate report ("MMG report"). The report explained that MMG had interviewed 17 of the 19 AKI physician members. While the report detailed certain positive aspects of the company, it noted that, overall, the company culture at AKI was poor. Specifically, the report found a lack of happiness and trust amongst AKI's members, that members were concerned about their low compensation, and that some of members were considering leaving the group. Furthermore, the report found that AKI's members were concerned that AKI's reputation was being diminished by internal conflicts between members.

{¶ 5} The meeting minutes from the September 11, 2019 meeting show that several members voiced concerns about how AKI was being managed. These included concerns over the fact that Dr. Anton had recently opened his own, separate company, Comprehensive Vascular Centers ("CVC"), in the summer of 2019, and that, despite CVC's lack of affiliation with AKI, Dr. Anton was using staff, furnishings, and other assets of AKI to set up the new business. [3] Members also raised concerns about how Dr. Anton would continue managing and working for AKI while also managing and working for CVC. The meeting ended with the members taking a vote on whether to further engage MMG's services by appointing MMG to act as COO of the company. According to the meeting notes, Dr. Anton

---

[3] CVC is a vascular-access center. Vascular-access centers specialize in interventional nephrology, or the care and maintenance of vascular access for hemodialysis and peritoneal access for peritoneal dialysis.

voted "no" to this proposition, while all 14 remaining members who attended the meeting voted, "yes." Despite the supermajority vote to retain MMB to serve as the company's COO, Dr. Anton took no further action to engage MMB services. The COO position at AKI thus remained vacant, with Dr. Anton serving as the sole manager of AKI in his position as CEO.

{¶ 6} Against this backdrop, on March 13, 2020, some of the physician members of AKI, along with their lawyers from several law firms, met at the offices of Frantz Ward LLP, to discuss a strategy for removing Dr. Anton as AKI's CEO. The attendees and representatives of the law firms all signed a common-interest agreement in which they agreed their discussions at the meeting would be protected by attorney-client privilege or work-product doctrine.

{¶ 7} On May 12, 2020, Dr. Flauto filed a derivative lawsuit on behalf of AKI, against Dr. Anton and his separate company, CVC. *See Flauto, on behalf of Americare Kidney Inst. v. Anton* (Cuyahoga C.P. No. CV-20-932536). The derivative lawsuit asserted a number of claims, including claims that Dr. Anton had breached fiduciary duties owed to AKI by, among other things, opening CVC and using AKI's resources to do so. The day after filing the derivative lawsuit, Dr. Flauto emailed AKI's physician members, other than Dr. Anton, a copy of the complaint and stated the following:

> AKI partners, [p]lease see the attached document filed late yesterday in the Cuyahoga County courts . . . . Many AKI members and representatives from throughout our organization have collectively provided and reviewed the information for which our AKI claims are

based, and which guides us moving forward. Thanks, Ron Flauto, DO, MBA.

Once served, Dr. Anton shared the lawsuit with AKI's outside counsel, John Hill. Since Dr. Flauto did not name AKI as an interested party to the lawsuit, Hill filed a motion on behalf of AKI to intervene in the derivative action.

{¶ 8} Following the filing of the derivative suit, on May 20, 2020, Dr. Petras sent an email to all AKI physician members requesting that the members schedule a meeting to discuss, among other things, the election of officers to the positions of COO and CFO. Dr. Petras's email made no mention of any plans to elect a new CEO. A member meeting was scheduled for June 3, 2020. Dr. Anton as CEO of AKI, circulated an agenda prior to the meeting. This agenda listed the election of COO and CFO among other agenda items.

{¶ 9} Dr. Anton was late to the June 3, 2020 member meeting. Dr. Petras took it upon himself to open the meeting and began by stating that he believed "there's simply no way [AKI] can continue with either [Flauto] or [Anton] in any type of management or leadership role." Dr. Petras then called for a vote to remove Dr. Anton as CEO. Dr. El-Hitti, one of the other Founding Members of AKI, raised several objections. Dr. El-Hitti argued, among other things, that a vote should not be called in Dr. Anton's absence, that Dr. Flauto should not be permitted to vote due to his conflict of interest as the person who filed the derivative lawsuit against Dr. Anton, and that the members were generally uninformed about the vote. Ultimately a vote was taken and 14 of the 18 members who were eligible to vote, voted in favor

of Dr. Anton's removal. [4] Three of the members who voted in favor of removal were Founding Members of the company: Drs. Petras, Flauto, and Argekar. Dr. El-Hitti and another Founding Member, Dr. Bansal, voted against removal, as did Dr. McKinley and Dr. Yafi. Thereafter, a vote was taken to elect Dr. Petras as CEO.

{¶ 10} Dr. Anton arrived at the meeting just after the vote to remove him had occurred, but prior to the vote to elect Dr. Petras as the new CEO. When Dr. Anton arrived, Dr. El-Hitti was still arguing that the removal vote should not have proceeded without Dr. Anton being present and without the members being better informed of the reasons for and against removal. Dr. Anton was eventually brought up to speed on what had just occurred. Despite Dr. El-Hitti's argument that a revote should take place now that Dr. Anton had arrived, Dr. Anton himself did not pursue a revote. Instead, Dr. Anton said that "it would not matter" and asked the members whether they had voted to remove him because of his performance as CEO or for some other reasons. A couple members stated explicitly that they voted to remove him because of his performance as CEO. Other members noted such things as the ongoing feud between Dr. Anton and Dr. Flauto, financial considerations involved with the derivative lawsuit, Dr. Anton's management style, and the fact that Dr. Anton had seemingly ignored the September 11, 2019 vote to retain MMG to serve as COO of the company, as reasons for voting for removal. An argument erupted among the members, at which point Dr. Anton asked that the discussion stop and

---

[4] Pursuant to Section 2.68 and Section 8.16 of the operating agreement, Dr. Anton was ineligible to vote on his removal because he was considered an "interested member."

that the meeting be allowed to proceed. It was at this point that the vote to elect Dr. Petras as CEO occurred. Dr. Anton seconded the motion to elect Dr. Petras as CEO. Dr. Petras was elected as the new CEO by 13 out of the 18 members eligible to vote.

{¶ 11} Two days later, on June 5, 2020, Dr. Anton sent a letter to AKI's counsel, John Hill, in which he challenged the vote to remove him as CEO as being both procedurally and substantively improper and a breach of AKI's operating agreement. Dr. Anton sent a similar letter via email to AKI's members and employees on June 7, 2020.

{¶ 12} Following his election to the position of CEO, on July 2, 2020, Dr. Petras created a special litigation committee ("SLC") to investigate the claims raised by Dr. Flauto against Dr. Anton in the derivative action filed on behalf of AKI. The SLC was to determine whether it was in the best interests of AKI for the lawsuit to continue. Dr. Petras appointed himself to the SLC, along with Drs. Rosplock and Argekar. Dr. Petras retained the law firm Flannery Georgalis to act as independent counsel for the SLC. The document that established the SLC outlined that the SLC members were capable of acting "independently and in good faith in the best interests of the Company." In September 2020, AKI, at the recommendation of the SLC, dismissed the action with prejudice.

{¶ 13} Thereafter, on October 16, 2020, Dr. Petras sent an email addressing Dr. Anton's compensation to all of AKI's physician members, excluding Dr. Anton. In his email, Dr. Petras explained that since opening his private-access center, CVC, in 2019, Dr. Anton's revenue contribution to AKI significantly dropped, yet he

continued to receive a full salary. Dr. Petras's email further explained that Dr. Anton no longer had the managerial duties associated with being the CEO of AKI, since he had been removed from the position in June. In light of these facts, Dr. Petras proposed reducing Dr. Anton's biweekly draw by 90 percent to align it with his current revenue generation. Several members responded to Dr. Petras's email with questions and concerns regarding the lack of clear rules around AKI's current pay structure. Ultimately, 13 of the 17 members who voted, voted in favor of reducing Dr. Anton's compensation by 90 percent.

{¶ 14} After the derivative lawsuit was dismissed with prejudice, Dr. Anton requested that AKI indemnify him for his attorney fees associated with defending against the derivative suit, in accordance with the terms of AKI's operating agreement. Dr. Anton's requests for indemnification were accompanied by redacted fee bills from his lawyers at Jones Day and Thrasher, Dinsmore & Dolan. On October 15, 2020, counsel for AKI, John Hill, sent Dr. Anton's counsel an email, which stated, in part, that

> I will require detailed invoices before I can respond substantively to this demand, especially in light of the facts that (a) you are the second law firm to submit bills for which Dr. Anton demands payment for the same matter; and (b) we made historical and persistent demands that Dr. Anton refrain from incurring legal fees until after the SLC performed its work and made its recommendations.

{¶ 15} Dr. Anton closed CVC in February 2022 due to a lack of operating funds. In April 2022, Dr. Anton accepted a position at the Cleveland Clinic

Foundation in Weston, Florida, where he continued to work as of the time of his deposition in this case.

### B. The Complaint

{¶ 16} On November 17, 2021, Dr. Anton filed the present lawsuit against AKI and its physician members.  On April 25, 2022, Dr. Anton filed an amended complaint that asserted the same claims but added other necessary parties to Count 1.[5]

{¶ 17} In Count 1 of the amended complaint, Dr. Anton asserted a claim for declaratory judgment against AKI and its physician members seeking the following declarations based on the contractual provisions in AKI's operating agreement:  (1) a declaration that the vote to remove Dr. Anton as CEO was both substantively and procedurally improper; (2) a declaration that Dr. Anton should be reinstated as CEO of AKI, or alternatively, that a receiver should be appointed to manage the company under R.C. 2735.01(A)(1), (6), or (7);[6] (3) a declaration that Dr. Anton is entitled to have his compensation reinstated; (4) declaration that Dr. Anton is entitled to compensation and backpay that he was wrongfully denied; and (5) a declaration that

---

[5] R.C. 2721.12(A) states: "(A) Subject to division (B) of this section, when declaratory relief is sought under this chapter in an action or proceeding, all persons who have or claim any interest that would be affected by the declaration shall be made parties to the action or proceeding."  Accordingly, Dr. Anton's amended complaint added all physician members of AKI as party defendants to Count 1 of the amended complaint.

[6] We note that Dr. Anton appears to have abandoned his request for appointment of a receiver.  His summary judgment briefing did not argue that he was entitled to appointment of a receiver, and he did not challenge the defendants' argument that he was not entitled to one.  Furthermore, Dr. Anton makes no argument in favor of appointment of a receiver on appeal.

Dr. Anton is entitled to indemnification for his attorneys' fees associated with his defense in the derivative litigation. Count 2 of the complaint raised similar claims against AKI as Count 1 but under a breach-of-contract theory seeking damages.

{¶ 18} In Count 3, Dr. Anton asserted fraud against Drs. Petras, Flauto, and Rosplock. Specifically, the complaint claimed that Drs. Petras and Rosplock committed fraud by misrepresenting to both Dr. Anton and the trial court in the derivative action that, as members of the SLC, they were independent and disinterested parties. Dr. Anton alleged that as signatories to the common-interest agreement entered into on March 13, 2020, Drs. Petras and Rosplock were not independent and disinterested parties. Dr. Anton alleged that at the time the SLC was formed, he did not know about the common-interest agreement and that he relied to his detriment on Drs. Petras and Rosplock's representation that they were neutral parties to the litigation. With regard to Dr. Flauto, Count 3 alleged that Dr. Flauto knew that Drs. Petras and Rosplock had signed the common-interest agreement and that under these circumstances, Dr. Flauto had a duty to disclose this fact to Dr. Anton. Dr. Anton further alleged that he was injured as a proximate result of his reliance on the alleged misrepresentations that Drs. Petras and Rosplock were independent and disinterested members of the SLC.

{¶ 19} Count 4 of the complaint alleged invasion of privacy against Dr. Vlasie, another member of AKI, for allegedly accessing Dr. Anton's personal medical records without his permission. That count is not relevant to the present appeal

however, because it was dismissed by the trial court on statute-of-limitations grounds, and Dr. Anton has not appealed that decision to this court.

{¶ 20} Dr. Anton alleged breach of fiduciary duty — specifically the duties of care, loyalty, good faith and fair dealing — against Dr. Vlasie in Count 5 of the complaint. Dr. Anton alleged that Dr. Vlasie violated these fiduciary duties allegedly owed to him as a fellow member of AKI by: (1) "engaging in an improper and unlawful plan to oust Dr. Anton from his position as CEO of AKI without just cause"; (2) "Improperly and illegally causing Dr. Anton to be removed from his position as CEO without just cause"; and (3) "failing to disclose the existence of the Common Interest Agreement when Dr. Petras and Dr. Rosplock were appointed to the SLC."

{¶ 21} Count 6 of the complaint alleged breach of fiduciary duty against Dr. Petras. Specifically, the count alleged that Dr. Petras owed Dr. Anton the duties of care, loyalty, good faith and fair dealing, and a duty to disclose and that Dr. Petras had breached these duties by: (1) "Engaging in an improper and unlawful plan to oust Dr. Anton from his position as CEO of AKI without just cause"; (2) "Improperly and illegally causing Dr. Anton to be removed from his position as CEO without just cause"; (3) "Implementing improper procedures inconsistent with the terms of the Operating Agreement to remove Dr. Anton from his position as CEO"; (4) "Falsely claiming that Dr. Rosplock and he were independent and disinterested when the SLC investigated the claims set forth in the Derivative Lawsuit"; and (5) "Continuing to improperly operate as AKI's CEO."

{¶ 22} Count 7 of the complaint alleged a breach-of-fiduciary-duty claim against Dr. Flauto. Again, Dr. Anton asserted that Dr. Flauto as a fellow member of AKI owed him the fiduciary duties of care, loyalty, good faith and fair dealing, and a duty to disclose and that these were breached when Dr. Flauto allegedly (1) engaged in an illegal plan to oust him as CEO, (2) illegally caused him to be removed as CEO, (3) implemented improper procedures to remove him as CEO, and (4) failed to disclose that Drs. Petras and Rosplock were not independent and disinterested members of the SLC.

{¶ 23} In Count 8 of the complaint, Dr. Anton raised the same breach-of-fiduciary-duty claims as those raised in Count 7, but against Dr. Rosplock.

{¶ 24} Finally, in Count 9, Dr. Anton raised a civil-conspiracy claim against Drs. Petras, Rosplock, Flauto, and Vlasie alleging that these doctors engaged in a conspiracy to illegally remove him as CEO of AKI.

{¶ 25} The defendants filed answers to the complaint, and discovery commenced.

### C. Summary Judgment

{¶ 26} At the close of discovery, Dr. Anton moved for summary judgment against AKI on Counts 1 and 2 of his complaint. AKI also filed a cross-motion for summary judgment on these counts. Drs. Petras, Rosplock, and Vlasie filed a joint motion for summary judgment as to the breach-of-fiduciary-duty claims asserted against them individually in Counts 5, 6, and 8, and Count 9, which raised a civil-conspiracy claim against them collectively. Drs. Petras and Rosplock also asked for

summary judgment with regard to Count 3, fraud. Dr. Flauto filed his own separate motion for summary judgment as to Count 3, fraud, and the breach-of-fiduciary-duty claim raised in Count 7 against him individually, and the civil-conspiracy claim raised against him and his fellow defendants in Count 9.

{¶ 27} Ultimately, the trial court denied Dr. Anton's motion for summary judgment on Counts 1 and 2 of the complaint and granted summary judgment in favor of AKI on those counts. It further granted summary judgment in favor of Drs. Vlasie, Petras, Flauto, and Rosplock, on the breach-of-fiduciary-duty claims raised in Counts 5, 6, 7, and 8, respectively, and also granted summary judgment in favor of these defendants on Count 9, the civil-conspiracy claim.

{¶ 28} Dr. Anton now appeals from the trial court's decision denying him summary judgment and granting summary judgment in favor of the defendants, by raising the following assignments of error:

> 1. The Trial Court erred by granting summary judgment against Appellant Dr. Anton as to Count I and Count II because, at a minimum, genuine issues of material fact exist as to whether Americare Kidney Institute, LLC materially breached the Operating Agreement by: (a) improperly removing Dr. Anton as CEO; (b) failing to indemnify Dr. Anton for expenses incurred in the Derivative Action; and (c) wrongfully reducing Dr. Anton's compensation.
>
> 2. The Trial Court erred by denying Dr. Anton's Motion for Summary Judgment as to Counts I and II because there is no genuine dispute of material fact that Americare Kidney Institute, LLC breached the Operating Agreement by: (a) removing Dr. Anton as CEO; (b) failing to indemnify Dr. Anton as a prevailing party; and (c) reducing Dr. Anton's compensation.
>
> 3. The Trial Court erred by granting summary judgment in favor of Doctors Vlasie, Petras, Flauto, and Rosplock with respect to Dr. Anton's claims related to breach of fiduciary duty (Counts V, VI, VII, and VIII,

respectively) because reasonable minds could differ as to whether Appellees' secret plan to force Dr. Anton out of AKI and implementation of that secret plan contravened the governing Operating Agreement and Ohio law in a manner constituting a breach of Appellees' fiduciary duties owed to Dr. Anton.

4. The Trial Court erred by granting summary judgment in favor of Appellees with respect to Dr. Anton's fraud claim, as genuine issues of material fact remain as to whether Dr. Anton's reliance on Appellees' statements in the course of the Derivative Action was reasonable and whether Dr. Anton was damaged as a result of his reliance on Appellees' statements.

5. To the extent this Court sustains Assignment of Error Numbers 3 or 4, the Trial Court erred by granting summary judgment in favor of Vlasie, Petras, Flauto and Rosplock with respect to Dr. Anton's civil conspiracy claim as Dr. Anton has stated a claim for an independent unlawful act.

## II. LAW AND ANALYSIS

{¶ 29} We review summary judgment rulings de novo, applying the same standard as the trial court. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). Under Civ.R. 56, summary judgment is appropriate when no genuine issue exists as to any material fact and, viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach only one conclusion that is adverse to the nonmoving party, entitling the moving party to judgment as a matter of law. *Id.* On a motion for summary judgment, the moving party carries an initial burden of identifying specific facts in the record that demonstrate his or her entitlement to summary judgment. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293 (1996). A fact is material if it "'might affect the outcome of the suit under the governing law' of the case." *Oko v. Cleveland Div. of Police,* 2021-Ohio-2931, ¶ 23 (8th Dist.), quoting *Turner v. Turner*, 67 Ohio St.3d 337, 340 (1993). "A factual dispute is 'genuine' only

if 'it allows reasonable minds to return a verdict for the nonmoving party.'" *Huntington Natl. Bank v. Blount,* 2013-Ohio-3128, ¶ 32 (8th Dist.), quoting *Sysco Food Servs. v. Titan Devs.,* 1995 Ohio App. LEXIS 4762, * 7 (9th Dist. Oct. 25, 1995).

## A. Declaratory Judgment

{¶ 30} Dr. Anton's first and second assignments of error are substantially similar in that they argue that the trial court should have granted summary judgment in his favor on Counts 1 and 2, and against the defendants on those same counts. Accordingly, we address them together.

{¶ 31} We note from the outset that part of Dr. Anton's argument on appeal centers around the mistaken idea that the trial court improperly "dismissed" his declaratory-judgment claims in Count 1. Specifically, Dr. Anton asserts in his briefing on appeal:

> The Trial Court's order dismissing Anton's breach of contract claims contains no discussion on why the Trial Court granted Appellees' Motion for Summary Judgment as to Count [1]. Instead, the Court simply states, in a conclusory fashion that, "[u]ltimately, the Court is unable to declare that Anton be reinstated as CEO of AKI. Such relief is not provided for under the law or the AKI OA." *See* R. 114 at p. 4. Other than this statement, the Trial Court's order does not indicate the basis on which it dismissed Anton's declaratory judgment claim, or why it reached that conclusion.

However, the trial court did not, as Dr. Anton contends, dismiss his declaratory-judgment claims in Count 1. In fact, the word "dismiss" appears nowhere within the trial court's judgment entry. Although it was not explained in detail by the trial court, a close inspection of the trial court's judgment entry shows that the trial court was under the impression that its analysis of the breach-of-contract claim in Count

2 resolved Dr. Anton's declaratory-judgment claims asserted in Count 1, requiring little to no exposition with regard to those claims. We agree.

{¶ 32} Declaratory judgments define the rights and duties of parties. *Worthington Nursing Home, Inc. v. Creasy*, 4 Ohio App.3d 92, 98 (10th Dist. 1982).[7] "It is settled in Ohio that the three elements necessary to obtain a declaratory judgment as an alternative to other remedies are: (1) that a real controversy between adverse parties exists; (2) which is justiciable in character; (3) and that speedy relief is necessary to the preservation of rights which may be otherwise impaired or lost." *Fairview Gen. Hosp. v. Fletcher*, 63 Ohio St.3d 146, 148-149 (1992).

{¶ 33} The only request for a declaration at issue in this appeal that is not duplicative of his claim for breach of contract is Dr. Anton's request that he be reinstated as CEO of AKI. It appears from statements made by Dr. Anton in his summary-judgment briefing that he is under the impression that he is still a member of AKI and thus still subject to AKI's operating agreement along with the other physician members such that he could be reinstated as CEO of AKI.[8] This is not

---

[7] Ohio's declaratory-judgment act states: "[A]ny person interested under a deed, will, written contract, or other writing constituting a contract [. . .] may have determined any question of construction or validity arising under the instrument, constitutional provision, statute, rule, ordinance, resolution, contract, or franchise and obtain a declaration of rights, status, or other legal relations under it." R.C. 2721.03.

[8] Dr. Anton states in his motion for summary judgment that in April 2022 he "took a leave of absence and mitigated his damages by securing additional employment."

true, however. AKI's operating agreement clearly states at section 10.3 of the operating agreement that

> [a] person shall cease to be a Member and shall have withdrawn from the Company upon the happening of any of the following events of withdrawal:
>
> (a) A Member quits being affiliated with the Company other than as a result of death, disability, or ceasing to practice medicine.
>
> . . .
>
> (e) The Member is no longer an employee of Company or employee of a Physician Organization which is a Member of the Company.

Likewise, Section 2.29 of the operating agreement, which defines CEO eligibility, states that an eligible candidate means "a *Member* or a person who is an Owner of a Physician Organization which is a *Member*, and said person is approved by a Super Majority of the Founding Members." (Emphasis added.) Section 9.9(c) of the operating agreement states: "A person who is no longer performing services for the Company, shall no longer be a Member."

{¶ 34} Dr. Anton ceased being a member of AKI in April 2022, when he left the company and pursued employment in Florida. Because of this, the operating agreement prohibited Dr. Anton from being reinstated as CEO of AKI, even if the trial court were to have found that AKI and its physician members had breached certain procedural or substantive requirements of the operating agreement in voting to remove him. Indeed, the trial court pointed this out in its journal entry when it stated: "Ultimately, the Court is unable to declare that Dr. Anton be reinstated as CEO of AKI. Such relief is not provided for under the law or the AKI operating

agreement." We affirm the trial court's denial of the declaratory-judgment claim with regard to Dr. Anton's reinstatement as CEO — and in turn any reinstatement of compensation related to his status as CEO — because, as a matter of law, the court had no authority to grant it after Dr. Anton had left AKI's employ.

{¶ 35} Aside from Dr. Anton's request for a declaration that he be reinstated to the position of CEO, the remainder of Dr. Anton's declaratory-judgment claim duplicates the breach-of-contract claim asserted in Count 2. Accordingly, we find no error in the trial court resolving Counts 1 and 2 together under a breach-of-contract analysis. *Accord Mid-Am. Fire & Cas. Co. v. Heasley*, 2007-Ohio-1248 ("The granting or denying of declaratory relief is a matter for judicial discretion."). For ease of discussion, we choose to take the same approach in our analysis on appeal.

## B. Breach of Contract

{¶ 36} To prevail on a claim of breach of contract, a plaintiff must prove (1) the existence of a binding contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damages resulting from the breach. *Cumberland Lakefront B, L.L.C. v. Blackwing, L.L.C.*, 2025-Ohio-1263, ¶ 20.

### 1. Alleged Procedural Issues

{¶ 37} Dr. Anton argues on appeal that the trial court erred in granting summary judgment in favor of AKI and denying his motion for summary judgment because, in voting to remove him, AKI breached Section 7.3 of the operating

agreement,[9] which states that the CEO shall chair member meetings, and also violated Section 8.2 (xlv), which states that the CEO shall be responsible for the agenda. Dr. Anton argues that since he was the active CEO of AKI at the time of the vote, Dr. Petras had no authority to direct the June 3, 2020 membership meeting in his absence, nor to set the agenda for the meeting, including the impromptu CEO removal vote. Dr. Anton also argues that AKI breached Section 8.16 of the operating agreement, which requires a 75-percent supermajority vote of the Founding Members in addition to a 75-percent supermajority vote of the members to remove the CEO. He argues that he was improperly removed, in violation of this section, when less than a 75-percent supermajority vote of the Founding Members voted to remove him.

{¶ 38} We agree with the trial court's determination that Dr. Anton waived any claim that AKI breached Sections 7.3 and 8.2 (xlv) of AKI's operating agreement by proceeding with a removal vote when the CEO — in this case Dr. Anton — was not present to preside over the meeting. As the First District explained:

> A waiver is an intentional relinquishment of a known right, which may be made by express words or by conduct. *Father & Son Property Maintenance, LLC v. Maxim Ents., Inc.*, 5th Dist. Stark No. 2010 CA 00116, 2011-Ohio-689, ¶ 21. To establish a waiver, the party alleging it "must prove a clear, unequivocal, decisive act of the party against whom the waiver is asserted which amounts to an estoppel on his part." *Id., quoting Cornett v. Fryman*, 12th Dist. Warren No. CA91-04-031, 1992 Ohio App. LEXIS 248, *6 (Jan. 27, 1992).

*Wsb Rehab. Servs. v. Cent. Accounting Sys.*, 2022-Ohio-2160, ¶ 28 (1st Dist.).

---

[9] A limited liability company's operating agreement is considered a contract for purposes of a claim for breach of contract. *See Holdeman v. Epperson*, 2006-Ohio-6209, ¶ 12.

{¶ 39} When Dr. Anton arrived to the meeting on June 3, 2020, after the vote to remove him had taken place, the question was raised as to whether the vote should have occurred in his absence. In discussing the possibility of a revote, Dr. Anton responded that his presence "wouldn't have made any difference," because he would not have been entitled to vote on the matter because of his status as an interested member.

{¶ 40} Furthermore, additional on-the-record discussions following Dr. Anton's arrival indicate that he was informed of the procedural irregularities surrounding the vote by AKI's legal counsel, who was present and actively responding to members' questions regarding the process for electing a new CEO. Specifically, counsel reprimanded the voting members for moving forward with the removal vote in haste, without first consulting legal guidance or reviewing the company's operating agreement to determine the appropriate procedure. He stated:

> As a practical matter if there are 14 votes to remove the CEO, you're going to have a new CEO. That's the bottom line. The vote was not done properly and it should have been talked about with counsel beforehand. It should be on the agenda. The agenda didn't say anything about removing the CEO and the CEO was not up for election, so you should have got legal advice or read your operating agreement and done it the right way because you took a vote and left yourself subject to an attack. It doesn't matter at the end of the day because if you have to notice another meeting and do it properly and put it on the agenda, literally the same vote could happen.

{¶ 41} Despite being made aware of the procedural irregularities of the vote and the fact that the vote would be "open to attack" because of these irregularities, Dr. Anton nonetheless took a clear and affirmative step to facilitate the election of a

new CEO. Notably, when a fellow physician at the meeting proposed a vote to elect Dr. Petras as the new CEO, Dr. Anton promptly seconded the motion.

{¶ 42} In light of these facts, we conclude that Dr. Anton engaged in a clear and unequivocal act that estops him from now asserting that AKI breached its operating agreement by permitting a removal vote to proceed without his setting the agenda or presiding over the meeting. Dr. Anton's post hoc assertions at his deposition[10] that he "was blindsided" by the vote to remove him and that it was "wasn't [his] position to say [whether the vote was] legal or not legal" does not create a genuine issue of material fact regarding waiver, given the unambiguous action he took during the meeting to facilitate the election of a new CEO. Rather than objecting to or challenging the vote to remove him after being told it was procedurally improper, Dr. Anton affirmatively participated in the vote to elect his successor. *See Chubb v. Ohio Bur. of Workers' Comp.*, 81 Ohio St.3d 275, 279 (1998) ("Waiver assumes one has an opportunity to choose between either relinquishing or enforcing of the right.").

### 2. Vote Requirements

{¶ 43} We disagree, however, with the trial court's finding that, as a matter of law, AKI and its physician members substantially complied with the substantive requirement of having the requisite number of votes to remove Dr. Anton. Upon

---

[10] The dissenting opinion cites to an affidavit from Dr. Anton as the basis for a genuine issue of material fact as to whether he intended to waive his procedural rights at the June 3, 2020 meeting. However, review of the affidavit shows that the affidavit contains no express denial by Dr. Anton that he waived those rights.

review of the contract provisions we find, as a matter of law, that Section 8.16 of the operating agreement requires that there be a vote of a supermajority of Members and a supermajority of Founding Members to remove a sitting CEO.

{¶ 44} The relevant law of contract interpretation was set forth as follows in *Ohio Water Dev. Auth. v. W. Res. Water Dist.*, 2002-Ohio-4393 (10th Dist.):

> The interpretation of a written contract is a matter of law to be determined by the court. *Alexander v. Buckeye Pipe Line Co.*, 49 Ohio St.2d 158 (1977), paragraph one of the syllabus. The paramount objective in construing such a written agreement is to ascertain the parties intent. *Aultman Hosp. Assn. v. Community Mut. Ins. Co.* (1989), 46 Ohio St.3d 51, 53 (1989). The agreement must be given a just and reasonable construction which carries out the intent of the parties as evidenced by the contractual language. *Skivolocki v. E. Ohio Gas Co.*, 38 Ohio St.2d 244 (1974) paragraph one of the syllabus. The parties' intent is presumed to reside solely within the language employed in the agreement. *Kelly v. Medical Life Ins. Co.*, 31 Ohio St.3d 130 (1987), paragraph one of the syllabus. Words and phrases appearing in a contract which are not specifically defined therein should be given their common, ordinary, and usual meaning. *Monsler v. Cincinnati Cas. Co.*, 74 Ohio App.3d 321, 329 (1991). It is of course well-settled that the fact that parties may adopt conflicting interpretations of a contract between them, while involved in litigation, will not create ambiguity or a basis for unreasonable interpretation of the language and original intent of the parties where no such ambiguity should reasonably be found. *Steward v. Champion Internatl. Corp.*, 987 F.2d 732, 734 (C.A.11, 1993). The question of whether ambiguity or uncertainty in the language of a contract requires resort to extrinsic evidence to ascertain the intent of the parties is a question of law for the court. *Latina v. Woodpath Dev. Co.*, 57 Ohio St.3d 212, 214 (1991).

*Id.* at ¶ 25.

{¶ 45} Section 8.16 of the operating agreement, titled "Removal" states that

> [a]n Officer, including the CEO and COO, may be removed by the Super Majority vote of the Members and Founding Members, and an Interested Member shall not be entitled to vote.

Pursuant to Section 2.68 of the operating agreement, a "Super Majority" is an affirmative vote of "at least seventy-five percent (75%) of those entitled to vote on that particular matter."

{¶ 46} The terms "Member" and "Founding Member" are specifically defined in separate provisions of the operating agreement and as such must be given the definitions assigned to them in the operating agreement. *See Sutton Bank v. Progressive Polymers, L.L.C.*, 2020-Ohio-5101, ¶ 18. ("When parties to a contract have given a word a specific meaning by expressly defining it in the contract, that definition will generally override whatever definition might otherwise be established by an examination of the word's ordinary meaning or common usage.").  Here, the term "Member" is specifically defined under the operating agreement at Section 2.41 as "[a] person or entity who owns Membership Units in Company and has executed this Agreement and has been admitted as a Member."  Section 2.34 of the operating agreement defines "Founding Members" as

> [t]he following persons for as long as the respective person is a Member:  Hany S. Anton, M.D., Ronald Flauto, D.O., Keith Petras, M.D., Wassim El-Hitti, M.D., Pushkar Argekar, M.D., Ahmed Fawzy, M.D., Vivek Nadkarni, M.D., and Saurabh Bansal, M.D.

{¶ 47} What we see from these two provisions is that the term "Members" as defined by the operating agreement includes all "Founding Members."  Since Founding Members are by definition included within the meaning of the term Member, there is no reason for Section 8.16 to refer to Founding Members unless the intent behind the provision was to require a supermajority vote of the Founding

Members, in addition to a supermajority vote of the Members, to remove the company CEO.[11]

{¶ 48} In its decision below, the trial court incorrectly determined that the removal vote was sufficient to remove Dr. Anton because only a majority vote of the members was necessary for removal. The trial court's determination was based on the mistaken finding that Section 9.4 of the operating agreement conflicted with Section 8.16's supermajority requirement. Section 9.4 provides that a "*majority vote of the Membership Interest* shall be required for . . . [t]he removal of any CEO or COO." (Emphasis added.) In light of this perceived conflict, the trial court determined there was an ambiguity in operating agreement's terms and that because none of the members objected at the time of the removal on June 3, 2020, including Dr. Anton, this ambiguity was "remedied" by the members' apparent understanding that a majority vote was sufficient to remove the CEO. We disagree with the court's findings here.

{¶ 49} We note that the term "Membership Interest" is specifically defined in Section 2.42 of the operating agreement as

> [a] Member's share of the Company (including a Member's Membership Units, as defined below) and the right to receive the benefits from and the duty to perform the obligations of a Member of the Company and the percentage ownership of the Company as listed on Schedule One of the Agreement which may be adjusted as provided in Article Six of the Agreement.

---

[11] As discussed later in this opinion, the operating agreement includes other provisions singling out votes of Founding Members from votes of members.

The Schedule One attached to the operating agreement reflects that each member of AKI has 100 units of shares in the company — in other words, an equal Membership Interest.

{¶ 50} Contrary to the trial court's finding, Section 9.4's reference to a "majority vote of the Membership Interest" does not conflict with Section 8.16's supermajority requirement, rather it complements it. What Section 9.4 does is represent a necessary, yet insufficient, condition for removal of the CEO. It requires that a majority of the Membership Interest vote in favor of removal,[12] in addition to the supermajority vote of both the Members and Founding Members. Applying Sections 8.16 and 9.4 in this way gives effect to all terms in the operating agreement, as we must. *See O'Bannon Meadows Homeowners Assn. v. O'Bannon Props., L.L.C.*, 2013-Ohio-2395, ¶ 25 (12th Dist.) (Where possible, a contract should be harmonized to give effect to all provisions.).

{¶ 51} Accordingly, we find that the trial court erred in determining that AKI and its physician members complied with the vote requirements for removing Dr. Anton as CEO. The undisputed facts show that although a supermajority of

---

[12] Based on the Schedule One, a majority of Members and of the Membership Interest of the various Members would be the same. However, that circumstance need not always be true because the operating agreement leaves open the possibility for one Member's Membership Interest to be different from another Member's.

Members voted to oust Dr. Anton as CEO, only a majority of Founding Members voted to remove him.[13]

{¶ 52} Despite AKI's breach on the vote requirements, we find that Dr. Anton cannot prevail on his breach-of-contract claim because the undisputed facts demonstrate that he incurred no damages as a result of the breach.[14] While CEO, Dr. Anton received the same compensation as every other member of AKI. At summary judgment, AKI introduced evidence showing that Dr. Anton continued to receive full compensation from the day of his removal as CEO until October 2020 when his compensation was reduced by a separate and distinct vote of the members based on his failure to meet revenue target levels. In response to this evidence, Dr. Anton did not introduce evidence of his own that would support a finding of cognizable contract damages as a result of the removal vote. Accordingly, AKI and its physician members were entitled to summary judgment on Dr. Anton's claim that they breached the operating agreement by removing him as CEO without a supermajority vote of the Founding Members. *See US Bank Trust N.A. v. Roberts*, 2025-Ohio-48, ¶ 11 (8th Dist.) (On summary judgment, if the moving party carries

---

[13] As noted, at the time of the June 3, 2020 meeting, six Founding Members remained with AKI. Three Founding Members voted to remove Dr. Anton. Dr. Anton was ineligible to vote because he was an "interested member." Consequently, to obtain a supermajority of the five disinterested Founding Members entitled to vote, four of the five Founding Members would have had to vote in favor of removal.

[14] The same would be true even if Dr. Anton's active participation in the election of AKI's next CEO did not constitute a waiver of the procedural deficiencies in the voting process — summary judgment was nonetheless properly granted in favor of AKI and its physician members because the undisputed facts show that Dr. Anton has not suffered any damages as a result of the alleged breach of procedural requirements.

the initial burden of identifying specific facts in the record that demonstrate entitlement to summary judgment, the nonmoving party has the reciprocal burden to point to evidence of specific facts in the record demonstrating the existence of a genuine issue of material fact for trial.).

### 3. Reinstatement of Compensation and Backpay

{¶ 53} We agree with the trial court's determination that Dr. Anton's claim for compensation and back pay fails as a matter of law because the undisputed facts show that the vote to reduce his compensation was valid and conducted in accordance with the operating agreement.

{¶ 54} Section 8.3(f) of the operating agreement governs changes in a member's compensation and states:

> [T[he CEO or COO may not and shall not authorize, approve, consent to, permit, suffer, agree or take any action to cause the Company to do any of the following without the prior written consent of a Super Majority of the Members: hire, terminate or make any material change to the Compensation of any physician/Member except as provided herein.

{¶ 55} At the October 2020 vote to reduce Dr. Anton's pay, 13 of the 17 physician members who appeared at the meeting and voted on the matter, voted in favor of reducing Dr. Anton's draw by 90 percent because of Dr. Anton's limited revenue contributions to the company. [15]  A vote of 13 out of 17 members is a 76-

---

[15] We note that Dr. Anton was not entitled to vote because he was an interested member and was thus precluded by the operating agreement from voting.  This vote occurred primarily through email communications between the members.  All votes were taken in writing via email.

percent supermajority vote of the members and satisfies the dictates of Section 8.3(f), which allows the CEO to reduce a member's compensation based on a supermajority written vote of the members.

{¶ 56} On appeal to this court, Dr. Anton argues that this number should really be 13 of 18 members, which would not be a supermajority vote in favor of salary reduction, because Dr. McKinley abstained from voting. Dr. McKinley removed himself from the vote on the grounds that he had already announced that he would be leaving the practice imminently and did not feel that his vote should be considered with regard to any ongoing matters at AKI. According to Dr. Anton, Dr. McKinley's abstention must be considered in the overall vote count. We disagree. AKI's operating agreement is silent as to how a majority or supermajority is determined when one or more members abstain. In the absence of instructions as to how abstentions are to be handled, Ohio common law applies. "The general view in Ohio is that the effect of an abstention is considered to be an acquiescence 'in the action taken by the majority of those who do vote.'" *Gogate v. Ohio State Univ.*, 42 Ohio App.3d 220, 223 (10th Dist. 1987), quoting *Babyak v. Alten*, 106 Ohio App. 191, 196 (9th Dist. 1958); *see also State ex rel. Shinnich v. Green*, 37 Ohio St. 227 (1881). In other words, abstention votes do not count toward the overall total vote count.

{¶ 57} We also agree with the trial court's determination that AKI did not breach Section 7.2 of the operating agreement when reducing Dr. Anton's compensation. Section 7.2 states:

Each Member is expected to generate revenue at the Revenue Target Level. A Member who is performing administrative duties for the Company or other related Companies, such as Real Estate, Dialysis Centers, joint ventures, Access Centers, or Billing Companies, shall have the Revenue Target Level reduced by a percentage equal to the percentage of time the Member is required to devote to administrative matters, and such Members Monetary Allocation shall not be reduced. The Revenue Target Level, and the method of computing the same shall be recommended by the CEO or COO and approved by a Majority of the Members. Any change shall be recommended by the CEO or COO and approved by a Majority of the Members and except as provided herein shall be the same for each Member. If the Member is a Physician Organization, each full time Physician in the Physician Organization is expected to generate revenue at the Revenue Target Level. Each quarter, the Members shall meet and review the revenue generated for each physician and the work of the Company. *Work shall be reapportioned such that each physician shall have the opportunity to have work so that the Member can generate revenue at the Revenue Target Level.* Provided a Member produces revenue at the Revenue Target Level, the Member shall receive a Monetary Allocation equal to the same amount as all other Members who have produced at the Revenue Target Level . . . . *If a Member does not produce revenue at the Revenue Target Level for any quarters in eight (8) consecutive quarters (but this shall not apply if the average for the eight (8) quarters exceeds the Revenue Target Level), then the Member's Monetary Allocation shall be adjusted to an amount equal to a fraction, the numerator of which is the revenue actually produced by the Member, and the denominator of which is the Revenue Target Level, multiplied by the Monetary Allocation paid to Members who reached the Revenue Target Level.*

(Emphasis added.)

{¶ 58} Dr. Anton argues that under Section 7.2 AKI had a duty to first reapportion work to him before it could reduce his draw. We disagree. By its terms, Section 7.2 anticipates a scenario where a member is failing to meet revenue target levels because of a lack of opportunity to meet those levels. In that case, it is incumbent upon the company to ensure that the member is given enough work so

as to ensure that revenue target levels can be met. The undisputed evidence that we have before us in the record establishes that Dr. Anton's failure to meet revenue target levels at AKI had nothing to do with a lack of work being sent his way. Rather, as outlined in Dr. Petras's email regarding Dr. Anton's compensation, Dr. Anton's lack of revenue generation for AKI in the months preceding the vote to reduce his pay was the result of Dr. Anton working, more-or-less full time, for his separate company, CVC. At the summary-judgment phase, Dr. Anton did not produce any evidence that countered the statements made by Dr. Petras in his email that would give rise to a genuine issue of material fact on this point. *See Roberts*, 2025-Ohio-48, at ¶ 11 (8th Dist.) (The nonmoving party has the reciprocal burden to point to evidence creating a genuine issue of material fact for trial.). Indeed, at no point in the proceedings below or before this court has Dr. Anton ever argued that his failure to meet revenue targets was because of a lack of opportunity to do so. Accordingly, we affirm the trial court's determination that, based on the undisputed facts, Dr. Anton is not entitled to compensation or back pay for the period between October 2020, when his draw was reduced, and April 2022 when he left AKI, because AKI did not breach the operating agreement when reducing his pay.

### 4. Indemnification

{¶ 59} Dr. Anton claims that the trial court erred in granting summary judgment in favor of AKI on his claim for breach of contract with regard to indemnification of legal fees associated with his defense in the derivative action. We agree.

{¶ 60} Section 8.17(c) of the operating agreement states that

[t]o the extent that an CEO or COO, Officer, employee, or agent has been successful on the merits or otherwise in defense of any action, suit, or proceeding referred to in subsection (a) or (b) of this Section 8.1[7], or in defense of any claim, issue, or matter therein, the Company shall indemnify him against expenses including, without limitation, attorneys' fees, actually and reasonably incurred by him in connection with the action, suit, or proceeding.

There appears to be no disagreement between the parties that the order dismissing the derivative suit with prejudice constitutes success on the merits. The disagreement between the parties here is whether Dr. Anton's attorneys' fees associated with the derivative litigation were "reasonably incurred" "in connection with the action." We find that a genuine issue of material fact exists with regard to this point.

{¶ 61} AKI, through its attorney, requested that Dr. Anton provide information regarding his fees. Testimony given by Dr. Anton during his deposition indicates that attorneys' fees were incurred in connection with the derivative suit and that the reason he has provided redacted copies of fee bills to AKI was because there was still ongoing litigation between Dr. Anton and AKI at the time of their submission and Dr. Anton was concerned about waiver of attorney-client privilege. AKI responded that a fee bill of approximately $70,000 cannot be reasonably incurred in a case that lasted approximately three and one-half months — the derivative suit was filed in May 2020 and dismissed in September 2020. Importantly, AKI has not rejected Dr. Anton's request to be indemnified. Rather, AKI disputes the reasonableness of the fees allegedly incurred.

**{¶ 62}** We find that there remains a question of fact as to whether Dr. Anton incurred attorneys' fees while defending himself against the derivative suit, and if so, whether those fees were reasonably incurred. The undisputed evidence in the record does not answer these questions one way or the other. Accordingly, we reverse the trial court's grant of summary judgment on the question of indemnification and remand to the trial court for further proceedings on this claim. We overrule all other aspects of Dr. Anton's first and second assignments of error.

## C. Breach of Fiduciary Duties

**{¶ 63}** In his third assignment of error, Dr. Anton argues that the trial court erred in granting summary judgment in favor of Drs. Vlasie, Petras, Flauto, and Rosplock on his breach-of-fiduciary-duty claims asserted in Counts 5, 6, 7, and 8 of the complaint. We disagree.

**{¶ 64}** A "fiduciary duty" is "[a] duty to act for someone else's benefit, while subordinating one's personal interests to that of the other person." *Black's Law Dictionary* (6th Ed. 1990). "A claim of breach of a fiduciary duty is basically a claim of negligence, albeit involving a higher standard of care." *Strock v. Pressnell*, 38 Ohio St.3d 207, 216 (1988). A plaintiff must prove the following elements to prevail on a claim of breach of fiduciary duty (1) the existence of a fiduciary duty owed to the plaintiff by the defendant; (2) the defendant's failure to observe that duty; and (3) that the plaintiff was proximately injured as a result of the defendant's failure to observe the duty. *See Breen v. Group Mgmt. Servs.*, 2022-Ohio-2689, ¶ 17 (8th Dist.). In this case, Dr. Anton argues that Drs. Vlasie, Petras, Flauto, and Rosplock

breached alleged fiduciary duties owed to him as a fellow member of AKI when they did not disclose the existence of the common-interest agreement and otherwise took steps to remove him from the position of CEO of AKI.

{¶ 65} At the time of the actions giving rise to this case, R.C. 1705.281 governed fiduciary duties owed by members of a limited-liability company to other members of the company. R.C. 1705.281 stated in relevant part:[16]

(A) The *only fiduciary duties a member* owes to a limited liability company and the *other members* are the duty of loyalty and the duty of care set forth in divisions (B) and (C) of this section.

(B) A member's duty of loyalty to the limited liability company and the other members is limited to the following:

(1) To account to the limited liability company and hold as trustee for the limited liability company any property, profit, or benefit derived by the member in the conduct and winding up of the limited liability company's business or derived from a use by the member of the limited liability company's property, including the appropriation of a limited liability company opportunity;

(2) Either to satisfy the requirements of division (A)(1)(a), (b), or (c) of section 1705.31 of the Revised Code or else to refrain from dealing with the limited liability company in the conduct or winding up of the limited liability company's business as or on behalf of a party having an interest adverse to the limited liability company.

(C) A member's duty of care to the limited liability company in the conduct and winding up of the limited liability company's business is limited to refraining from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law.

---

[16] R.C. 1705.281 was repealed by 2020 S.B. 276, § 3, effective February 11, 2022. Dr. Anton concedes that R.C. 1705.281 was the operative statute in effect in 2020 when the allegations giving rise to his complaint occurred. The first paragraph of AKI's operating agreement states that AKI is "a limited liability company organized pursuant to Chapter 1705 of the Ohio Revised Code."

(Emphasis added.)

{¶ 66} R.C. 1705.281 makes clear that the "only fiduciary duties a member owes" to the company or another member of the company are the duties of loyalty and care set forth in subsections (B) and (C) of the statute. Dr. Anton has failed to pinpoint the existence of a fiduciary duty owed by Drs. Vlasie, Petras, Rosplock, and Flauto that may have been implicated by the actions they took in furtherance of removing him as CEO of AKI. Dr. Anton does not allege and has offered no evidence that these doctors mismanaged AKI property or profits or some other benefit belonging to the company, in violation of R.C. 1705.281(B)(1). Nor does he allege or offer any evidence that they engaged in some contract or transaction that was unfair to AKI, in violation of R.C. 1705.281(B)(2). Nor does Dr. Anton allege or offer any evidence that the doctors were grossly negligent or reckless, or that they engaged in intentional misconduct or a knowing violation of the law, in violation of R.C. 1705.281(C).

{¶ 67} At summary judgment and on appeal Dr. Anton argues that Drs. Vlasie, Petras, Rosplock, and Flauto violated their duties of good faith and fair dealing when they did not disclose the existence of the common-interest agreement and took steps to remove him as CEO. It is important to note that good faith and fair dealing are not fiduciary duties, rather they are implied covenants between parties to a contract. *See Bridge Health Care Partners, L.L.C. v. LTAH Real Estate Holdings, L.L.C.*, 2022-Ohio-1053, ¶ 18 (7th Dist.). Dr. Anton's reference to "good faith" and "fair dealing" comes from R.C. 1705.281(D), which states: "A member

shall discharge duties to the limited liability company and the other members pursuant to this chapter or under the operating agreement and shall exercise any rights consistent with the obligation of good faith and fair dealing."[17]  In other words, subdivision (D) requires that members of a limited liability corporation exercise any *rights* afforded them under R.C. Ch. 1705 or the operating agreement by acting fairly and in good faith.

{¶ 68} No tort cause of action exists for breach of good faith and fair dealing. *Stancik v. Deutsche Natl. Bank*, 2015-Ohio-2517, ¶ 46 (8th Dist.).  Rather the "covenant of good faith and fair dealing is part of a contract claim and does not stand alone as a separate claim from breach of contract." *Id*.  Dr. Anton asserts no claim for breach of contract against Drs. Vlasie, Petras, Rosplock, and Flauto related to their nondisclosure of the common-interest agreement or the steps they took to remove him as CEO.  Nor does he point to any provision in AKI's operating agreement that prohibits AKI members from privately meeting to discuss AKI's management or from voting to remove the CEO.  Rather the only breach-of-contract claims asserted by Dr. Anton related to alleged procedural and substantive problems with the vote to remove him as CEO and the separate vote to reduce his compensation.  Accordingly, his claim that these doctors breached the covenant of good faith and fair dealing fails as a matter of law.  *See id.*

---

[17] We note that R.C. 1705.281 is explicit that the only fiduciary duties imposed on members of a limited liability company, are found in subsection (B) and (C) of the statute, not (D).

{¶ 69} The trial court correctly granted summary judgment in favor of the defendants on Counts 5 through 8. Accordingly, we overrule Dr. Anton's third assignment of error.

**D. Fraud**

{¶ 70} In his fourth assignment of error, Dr. Anton argues that the trial court erred in granting summary judgment in favor of Drs. Petras, Rosplock, and Flauto on his fraud claim outlined in Count 3 of the amended complaint. We disagree.

{¶ 71} To prevail on a claim of fraud a plaintiff must prove: (1) a representation or, where there is a duty to disclose, omission of a fact, (2) that is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying upon it, (5) justifiable reliance upon the representation or concealment, and (6) a resulting injury proximately caused by the reliance. *Stancik*, 2015-Ohio-2517, at ¶ 51 (8th Dist.), citing *Cohen v. Lamko, Inc.*, 10 Ohio St.3d 167 (1984). "All of these elements must be present to find actionable fraud. The absence of even one of these elements precludes recovery." *Malek v. Eresearch Tech. Inc.*, 2022-Ohio-3330, ¶ 24 (8th Dist.), citing *Westfield Ins. Co. v. HULS Am., Inc.*, 128 Ohio App.3d 270, 280 (10th Dist.1998).

{¶ 72} Dr. Anton's fraud claim against Drs. Petras and Rosplock is based on his contention that these doctors represented to the court in the derivative suit that they were "independent" and "disinterested" members of the SLC. Dr. Anton further

maintains that Dr. Flauto also committed fraud when he failed to disclose to Dr. Anton that Drs. Petras and Rosplock were not independent or disinterested members of the SLC because they had entered into the common-interest agreement as part of the March 2020 meeting to discuss removing Dr. Anton as CEO of AKI.

{¶ 73} In their motions for summary judgment, Drs. Petras, Rosplock, and Flauto produced evidence showing that the only actions taken by the SLC as part of the derivative suit was to file a motion to dismiss the derivative suit along with a notice of determination finding that it was in AKI's best interest to dismiss the suit with prejudice. The notice of determination contained the representation that the members of the SLC were independent and disinterested. Dr. Anton filed a motion informing the court that he agreed with AKI's motion to dismiss. Dr. Anton stated, in part:

> The Motion, Brief in Support, and Notice of Determination demonstrate that the members of AKI's SLC are free from any disqualifying self-interest, that they are independent and that the SLC's investigation was conducted thoroughly and in good faith. With all these criteria met, the SLC's determination that this action should be dismissed under Ohio law. The Court must defer to AKI's business judgment.

The court then dismissed all of the claims that Dr. Flauto had filed against Dr. Anton in the derivative litigation.

{¶ 74} The undisputed evidence demonstrates that Dr. Anton did not rely to his detriment on the alleged misrepresentations and/or omissions. He benefited from the dismissal of the derivative action. Accordingly, we find the trial court's grant of summary judgment in favor of Drs. Petras, Rosplock, and Flauto on Count

3 of the amended complaint was proper. We therefore overrule Dr. Anton's fourth assignment of error.

### E. Civil Conspiracy

{¶ 75} Dr. Anton's fifth and final assignment of error argues that the trial court erred in granting summary judgment in favor of Drs. Petras, Rosplock, Vlasie, and Flauto on his civil-conspiracy claim alleged in Count 9 of the amended complaint. Common law civil conspiracy has been defined as "'a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages.'" *Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St.3d 415, 419 (1995), quoting *LeFort v. Century 21-Maitland Realty Co.*, 32 Ohio St.3d 121, 126 (1987). "An action for civil conspiracy cannot be maintained unless an underlying unlawful act is committed." *Wilson v. Harvey*, 2005-Ohio-5722, ¶ 41 (8th Dist.), citing *Gosden v. Louis*, 116 Ohio App.3d 195, 219 (9th Dist. 1996), citing *Minarik v. Nagy*, 8 Ohio App.2d 194, 195 (8th Dist. 1963). Dr. Anton's civil-conspiracy claim is based on allegations that Drs. Petras, Rosplock, Vlasie, and Flauto breached fiduciary duties they owed to Dr. Anton as a member of AKI and also engaged in fraud. Since Drs. Petras, Rosplock, Vlasie, and Flauto were entitled to summary judgment in their favor on Dr. Anton's claims of breach of fiduciary duty and fraud, they are also entitled to summary judgment on the derivative conspiracy claim. Accordingly, we overrule Dr. Anton's fifth assignment of error.

## III. CONCLUSION

{¶ 76} For the reasons outlined above, we affirm the trial court's grant of summary judgment in favor of AKI and its physician members on all counts in Dr. Anton's amended complaint, except for Count 2's allegation of breach of contract with regard to AKI's refusal to indemnify Dr. Anton for his defense of the derivative lawsuit. We remand to the trial court for further proceedings in aid of determining (1) whether Dr. Anton's expenses were reasonably incurred, and (2) the amount of indemnification owed, if any.

{¶ 77} Judgment affirmed in part, reversed in part, and remanded to the trial court for proceedings consistent with this opinion.

It is ordered that appellant and appellees share costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LISA B. FORBES, PRESIDING JUDGE

MARY J. BOYLE, J., CONCURS;
ANITA LASTER MAYS, J., CONCURS IN PART AND DISSENTS IN PART (WITH SEPARATE OPINION)

ANITA LASTER MAYS, J., CONCURRING IN PART AND DISSENTING IN PART:

{¶ 78} I concur with the majority's judgment to remand this matter on the indemnification claim. However, I would also find there are disputed issues of material fact regarding Dr. Anton's breach-of-contract claim and would reverse summary judgment on Count 2.

{¶ 79} A trial court's ruling on a motion for summary judgment is reviewed de novo, applying the same standard as the trial court. *Schlegel v. Summit Cty.*, 2024-Ohio-5678, ¶ 16. Summary judgment is proper when there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). In reviewing such motions, courts must construe disputed evidence in favor of the nonmoving party and give all favorable inferences to that party. *Id.* Here, the majority appears to resolve evidentiary conflicts in favor of the moving party, rather than in Dr. Anton's favor, contrary to *Dresher*.

{¶ 80} The majority affirms summary judgment on grounds that Dr. Anton waived his breach-of-contract claim by declining to accept an offer of a revote following his removal as CEO. However, waiver requires a voluntary relinquishment of a known right demonstrated by a clear and intentional act. *Father & Son Property Maintenance, LLC v. Maxim Ents., Inc.*, 2011-Ohio-689, ¶ 21 (5th Dist.). When there are disputed material questions of fact, the determination of whether a party has waived a contractual right is a factual question that typically cannot be resolved on summary judgment. *See Emch v. MHD Corp.*, 1980 Ohio App. LEXIS 12386, *4

(6th Dist. Aug. 29, 1980)*; see also Monroe Excavating, Inc. v. DJD&C Dev., Inc.,* 2011-Ohio-3169, ¶ 40 (7th Dist.); *Am. Logistics Group, Inc. v. Weingart*, 2005-Ohio-4809, ¶ 31 (8th Dist.).

{¶ 81} The members contend that Dr. Anton intentionally waived any breach-of-contract claims by rejecting an offer to hold a revote. In contrast, Dr. Anton challenged the validity of the original removal vote on several independent procedural grounds:

> 1. The vote was not listed on the agenda he circulated as CEO;
>
> 2. It occurred during his absence;
>
> 3. It involved participation by a member then actively litigating against him;
>
> 4. Other members contemporaneously objected to the irregular process.

(Appellant's Brief at 24–30; Majority opinion ¶ 9.)

{¶ 82} In support of his claims, Dr. Anton submitted an affidavit expressly stating that he did not intend to waive his rights under the Operating Agreement (Reply Brief at 4). Dr. Anton Stated:

> Because the vote to remove me procedurally and substantively violated the Operating Agreement, my counsel sent a letter to AKI on June 5, 2020 and I followed up with an email to AKI members and employees challenging the vote.

( Exhibit A, paragraph 17.)

{¶ 83} When construed in the light most favorable to Dr. Anton, the affidavit creates a genuine issue of material fact regarding his alleged waiver.

{¶ 84} These alleged procedural irregularities implicate distinct contractual obligations. Noncompliance with specific provisions of the Operating Agreement, such as those relating to notice, agenda control, and voting participation, raises factual questions that preclude summary judgment. *First Fed. S. & L. Assn. v. Cheton & Rabe*, 57 Ohio App.3d 137, 140 (9th Dist. 1989) (Even when a contract is clear and unambiguous, a dispute concerning whether a party complied with its procedural terms is a factual issue.) — The trier of fact should decide whether procedures leading up to the vote for Dr. Anton's removal complied with the contractual terms of the Operating Agreement. Likewise, a trier of fact should determine whether Dr. Anton's actions constituted a waiver of the agreement and whether he suffered legally cognizable damages as a result of any breach.

{¶ 85} I agree with the majority's holding that the trial court erred in granting summary judgment on the indemnification claim. However, the record also presents genuine issues of material facts concerning breach of the Operating Agreement, waiver, and damages.

{¶ 86} While the trier of fact may ultimately conclude that Dr. Anton waived his rights under the Operating Agreement, that determination cannot be made during the summary-judgment phase. In light of the conflicting evidence offered to prove material facts, I would also reverse the trial court's judgment on Dr. Anton's breach-of-contract claims and remand the matter for further proceedings.

{¶ 87} Accordingly, I concur in part and dissent in part.